**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

EYAL VADAI, on behalf of himself and others similarly situated,

Plaintiff,

    -against-

DUN & BRADSTREET CREDIBILITY CORP.

Defendant.

No. 14-cv-1617 (LLS)

**AMENDED CLASS ACTION**
**COMPLAINT AND JURY**
**DEMAND**

Plaintiff Eyal Vadai ("Plaintiff"), individually and on behalf of all other similarly situated, through counsel, and for its complaint against defendant Dun & Bradstreet Credibility Corp. ("Defendant"), states and alleges as follows:

**NATURE OF THE ACTION**

1.       This action seeks statutory damages and injunctive relief pursuant to the Telephone Consumer Protection Act, codified at 47 U.S.C. § 227, in connection with unsolicited telemarketing calls made by Defendant to the cellular telephone of Plaintiff and others similarly situated.

**JURISDICTION**

2.       This Court possess subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the claims asserted herein arise under Federal law and pursuant to 28 U.S.C. § 1332(d) because the amount in controversy is, upon information and belief, in excess of $5 million and there is minimal diversity between plaintiff and defendant. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant conducts business in this district and acts alleged herein occurred within this district.

## PARTIES

3.      Plaintiff Eyal Vadai ("Plaintiff") is an individual residing in this district.

4.      Defendant Dun & Bradstreet Credibility Corp. ("Defendant") is, upon information and belief, a corporation registered in the State of Delaware and registered as a foreign business in the State of New York.

## TELEPHONE CONSUMER PROTECTION ACT

5.      The Telephone Consumer Protection Act is codified at 47 U.S.C. § 227 (the "Consumer Protection Act").

6.      The Consumer Protection Act provides that it is "*unlawful for any person within the United States…to make any call* (other than a call made for emergency purposes or made with the prior express consent of the called party) *using any automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a…cellular telephone service…*" (47 U.S.C. § 227(b)(1)(A)(iii)) (emphasis added.)

7.      The Consumer Protection Act further provides that "[t]he term 'automatic telephone dialing system' means equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." (47 U.S.C. 227(a)(1)) (an "Automatic Telephone Dialing System").

8.      The Consumer Protection Act, to compel compliance with its prohibitions, provides that:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—
>
> (A)   an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
> (B)   an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
> (C)   both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

(47 U.S.C. § 227(b)(3).)

9.     All acts attributed to Defendant in this Class Action Complaint shall be deemed to refer to acts by any agent, associate, affiliate, subsidiary or joint venturer of Defendant or any act taken by any person, as defined in 47 U.S.C. § 153, on behalf of or for the benefit of Defendant.

**FACTUAL ALLEGATIONS**
**REGARDING CALLS FROM DEFENDANT TO PLAINTIFF**

10.     Plaintiff never provided permission to Defendant to call his cellular telephone nor to contact him regarding any services offered by Defendant.

11.     On February 10, 2014, Plaintiff received a phone call from Defendant on Plaintiff's cellular telephone.

12.     Plaintiff answered this call, unaware it was a call from Defendant, and Defendant's representative stated she was calling from Defendant and then proceeded to attempt to sell to Plaintiff a service offered by Defendant for an annual fee of $495.

13.     Plaintiff informed the Defendant's representative that she was calling Plaintiff's cellular telephone number but Defendant's representative nonetheless persisted in attempting to sell to Plaintiff a service offered by Defendant.

14.     Plaintiff asked Defendant's representative if she had any permission on file permitting Defendant to call Plaintiff's cellular telephone.  Defendant's representative informed Plaintiff that she was unaware of any authorization by Plaintiff permitting Defendant to telemarket to Defendant's cellular telephone.

3

15.     Plaintiff asked Defendant's representative how she obtained Plaintiff's cellular phone number and she indicated that it was stored on Defendant's phone system and that this system would select the phone number to be dialed.  Upon information and belief, Defendant called Plaintiff from a phone system that can dial phone numbers.

16.     Plaintiff received similar unsolicited marketing calls from Defendant preceding the call from Defendant on February 10, 2014.

17.     Defendant never advised Plaintiff of Defendant's phone number or address during any of its unsolicited calls to Plaintiff.

18.     Upon information and belief, including the representations made by Defendant's representative, the telemarketing calls from Defendant to Plaintiff were placed by Defendant using an Automatic Telephone Dialing System.

**FACTUAL ALLEGATIONS**
**REGARDING PLAINTIFF'S REVIEW OF ONLINE FORUMS**

19.     Plaintiff entered the precise phone number from which Defendant called him into an online search engine and the search results included numerous online forums dedicated to comments regarding unsolicited calls from this same exact phone number.  The following are just a handful of comments from just three of these forums:

- "Keeps calling cell number and never leaves a message…" (May 10, 2011)

- "We are a very small manufacturing company and we also got a call from Dunn and Bradstreet Credibility saying there had been 17 inquiries within the last 90 days and our D&B information was not up to date.  The caller was pretty smooth saying 'she was concerned about the way our rating was being reported' but she was 'not allowed to name the vendors that had

checked our D&B reports'. …  We have NEVER had a vendor question our creditworthiness since we pay ALL our bills in a timely manner.  In the past 90 days we have contacted a single new vendor and none of our current vendors have placed a call to our company looking for payment....so 17 inquiries to D&B is a baldfaced lie." (Aug. 12, 2011)

- "we've received several calls from these jerks, at our business - the latest one today and it's always the same-o same-o today it was 9 inquiries into our credit rating and I could hear the other telemarketers/scammers in the background." (Sep. 22, 2011)

- "CAUTION - DIRTBAG ALERT…  These cockroaches call TWICE a day.  Any reputable, ethical facility won't do that…  D&B scam" (Oct. 14, 2011)

-  "Get the same call almost daily..." (Oct. 27, 2011)

- "received a call from this # today from a Christine Hervey. She said there was activity on the company credit card. ( It is a small company and there is not one credit card in the company name) so I knew something seemed fishy."  (Nov. 7, 2011)

- "Christine Pickett from Dun and Bradstreet, lots of credit reports pulled, what have you been doing to generate this interest - must be working.  BS, we're a small company with few credit and no TERM accounts...This is a scam."  (Dec. 16, 2011)

- "I recieved [sic] the same sort of call from these people who claimed that there were a lot of activity on my business credit report. I told her that was funny since I do not have a "business" credit card." (Dec. 22, 2011)

- "they keep calling my cell phone but never leave any message." (Feb. 10, 2012)

- "Called and said 6 companies have complained about my husbands company. All of their info was wrong…" (Feb. 21, 2012)

- "just won't stop calling......." (Aug. 21, 2012)

- "This # is for Dun & Bradsreet Credibilty [sic] Corp which is a partner of D&B." (Mar. 16, 2013)

- "Today I received an unwanted call from this number. They stated they had information about my business credit report. Sounds like a hoax and scam to me. Am reporting the number as my business is listed on the national do not call registry." (Mar. 27, 2013)

- "Illegal robocall claiming to be from Dunn and Bradstreet calling about suspicious activity on our business credit report. The recording then went on to tell me to press whatever number to speak to a live rep or if they have called at an inconvenient time, they will try calling back! Another day, another telespammer." (Aug. 29, 2013.)

- "Dun & Bradstreet is responsible for trying to bilk businesses out of money using a phony line. I have received multiple calls from this number. I think DNB needs to fix it." (Jan. 7, 2014)

- "We keep receiving phone calls from this number, they ask if they can speak to the business owner. When I tell them he is not available can I help them they say they are with Dunn & Bradstreet and its very important they talk to the owner about activity on our business credit report. We have told them to stop calling but they don't they call at least once a week." (Jun. 7, 2012)

- "I still receive calls from these clowns. Wish there was a law...." (Jul. 10, 2012)

- "Call #4 today. Dun & Bradstreet once again reports that there have been 6 (six) businesses that have looked at our companies credit report. How come its always 6? Shouldn't they change it up a bit?? Wouldn't 20 sound more impressive? When you are making shit up why stop at a mere six..." (Nov. 12, 2013)

20.    The Wall Street Journal reported on June 20, 2013 that "Brian Shappell, a government-affairs liaison for the National Association of Credit Management, a credit-industry advocacy group representing more than 15,000 business-credit and financial professionals world-wide, said Dun & Bradstreet Credibility's marketing has prompted numerous complaints from business owners to lawmakers and state agencies around the country" and noted hundreds of complaints to the Federal Trade Commission related to telemarketing of one of Defendant's services.

## <u>FACTUAL ALLEGATIONS REGARDING DEFENDANT'S USE OF AN AUTOMATIC TELEPHONE DIALING SYSTEM</u>

21.    On April 1, 2014, Defendant brought a motion to dismiss Plaintiff's initial complaint filed in this action claiming that Plaintiff failed to sufficiently allege that Defendant used an Automatic Telephone Dialing System.

22.    Plaintiff disputes that the initial complaint of March 10, 2014 failed to sufficiently allege that Defendant used an Automatic Telephone Dialing System but nonetheless agreed to amend its complaint to provide additional allegations regarding Defendant's phone system to avoid the time and expense of contesting Defendant's motion to dismiss.  Hence, this section provides additional allegations regarding Defendant's phone system in compliance with the parties so ordered stipulation that in exchange for Plaintiff adding additional allegations regarding Defendant's phone system, Defendant shall no longer seek to dismiss Plaintiff's complaint.

23.    On April 10, 2014, Defendant produced to Plaintiff a copy of a document which Defendant represented is the operating manual for its phone system (the "Manuel") which provides, *inter alia*:

- The "List Overview" section of the Manuel provides: "List Maintenance offers utilities for creating, manipulating, and analyzing call lists."  One of the buttons in this section of Defendant's phone system is labeled a "Sequential Call List" function.

- The "Creating a Call List" section of the Manuel provides: "Call lists can be created manually from Results table of a campaign or any FoxPro database file when you are not using DynaCall to create call lists."

8

- The "Creating a Sequential Call List" section of the Manuel provides: "This utility allows the creation of a list of numbers in any area code and exchange. For example, it allows user to create a list to call every number from 713-795-0000 to 713-795-9999. The list can be randomized, assigned Caller ID and Caller text, and data that already exists in a campaign Results table (all or based on termination code) can be excluded from the list."

- The "Merging Call Lists" section of the Manuel provides: "The Merge Call Lists utility allows user to combine up to ten existing call lists into a single new list."

- The "Editing/Rebuidling a Call List" section of the Manuel provides: "Edit/Rebuild Call Lists allows the user to make changes to an existing call list, including randomizing the list, sorting it, updating any or all termination codes, filtering Do-Not-Call numbers and modifying single records."

- The "Import Overview" section of the Manuel explains how to import data to create calling lists in Defendant's phone system.  Defendant's phone system can also create and store lists of phone numbers to be dialed automatically by Defendant's phone system.  "Before an outbound campaign can begin, the campaign must be assigned a call list to dial." Defendant's phone system can create specific lists of phone numbers to be auto dialed, what the Manuel refers to as "campaigns," and how Defendant's phone system will auto dial the number on these lists.

9

- The "Understanding the Interface" section of the Manuel provides that Defendant's phone system has a "Lists" button which "allows the user to create, manipulate, and analyze call lists."

- The "Agent Permissions" section of the Manuel provides that Defendant's phone system has, among other permissions that can be assigned to one of its agents, the permission to "Allow Outbound Predictive Calls" which is defined as "Enables the agent to take outbound predictive calls," the permission to "Allow Outbound Preview Calls" which is defined as "Enables the agent to take outbound preview calls," and the permission to set "Minimum Time Between Preview Calls."

- The "Agent Skills" section of the Manual provides that Defendant's phone system automatically dials phone numbers and routes these calls to Defendant's agents based on predefined criteria: "The 'Skill-based Call Routing' feature enables the system to determine essential skills required to handle each call and then route the call to the most suitable agent. This tab allows the user to assign skills and skill level to an agent so that agents receive only those calls that match their skills set. … If an agent does not satisfy minimum skill level in a campaign, he will not be included in distribution list of calls."

- The "Assigning Campaigns to Agents" section of the Manual provides that the phone numbers automatically dialed by Defendant's phone system can be grouped into campaigns and assigned to specific agents: "Once agents

10

are created, assign campaigns to them to make them functional. For that, select the Campaign Assignments tab."

- The "Creating a Basic Campaign" section of the Manuel provides that Defendant can "adjust the Minimum and Maximum Pacing as necessary" of the phone numbers that are automatically dialed by Defendant's phone system.

- The "Configure Dial Settings" section of the Manuel explains a host of parameters that may be applied to the phone numbers automatically dialed by Defendant's phone system, including the "maximum number of lines the system is set to dial at any time," the percentage of calls that are acceptable to drop" where a "dropped call" is defined "as a call that is connected to the number being called, but no[ne of Defendant's agents] were available to take the call," as well as the duration of time Defendant's phone system will wait before hanging upon on any automatically dialed phone number.

- The "Setting Messages for Calls" section of the Manuel explains how to configure a greeting message where Defendant's phone number has automatically dialed a phone number and none of Defendant's agents are available to take the call.

- The "Setting up Preview Dialing" section of the Manuel provides: "Preview dialing allows client data to be sent to [Defendant's agents] before each call is dialed. When Preview Dialing is enabled for an Agent Station, each customer's dialing information is displayed on the Agent

11

Screen before the customer's number is dialed. [Defendant's agent] can then decide whether to dial the number or preview the next number. If no action is taken, the selected Preview Timeout Action will occur."

- The Manuel has sections entitled "Assigning Skills to ACD [Automatic Call Distributor] Group" and "Assigning Agents to ACD [Automatic Call Distributor] Group."

- The "Randomize Call Lists" section of the Manuel provides: "Call List records can be reshuffled randomly to refresh call lists. To randomize a list, click Randomize radio button. Click Rebuild to save changes. In case, you do not want to sort or randomize a call list, select No Action."

- The "Lead Skill Assignment" section of the Manuel provides: "In StrataDial, skills define an agent's ability to process a call. In fact, these are the basic blocks used in determining customer needs or preferences, evaluating the ability of available agents in a campaign or ACD [Automatic Call Distributor] group and then routing the call to the most suitable agent. Skills can be assigned to agents, campaigns, ACD [Automatic Call Distributor] groups and leads. … This section explains the procedure for assigning a skills to a lead so that whenever the lead is dialed, the call is routed only the agent who qualifies minimum skill level required to process the call."

- The "Assigning Skills to Campaign" section of the Manuel provides: "The 'Skill-based Call Routing' feature enables the system to determine essential skills required to handle each call and then route the call to the

12

most suitable agent. This tab allows the user to assign skills and skill level to a campaign so that agents in a particular campaign receive calls according to their skill set."

• The "Creating Skills" section of the Manuel provides: "In StrataDial, skills define an agent's ability to process a call. In fact, these are the basic blocks used in determining customer needs or preferences, evaluating the ability of available agents in a campaign or ACD [Automatic Call Distributor] group and then routing the call to the most suitable agent. Skills can be assigned to agents, campaigns, ACD [Automatic Call Distributor] groups and leads."

• The "Assigning ACD [Automatic Call Distributor] Groups to Agents" section of the Manuel provides: "This tab allows the users to assign ACD [Automatic Call Distributor] groups to agents and grants permissions on ACD [Automatic Call Distributor] groups to each agent."

• The "Adjusting Pacing Values" section of the Manuel provides: "Pacing refers to dialing speed of a dialer for a campaign. The purpose of pacing is to ensure effective utilization of system resources and maximum production of campaigns. … In a live environment, dialer considers a number of factors including Drop Ratio, Drop Ratio Goal, available agents and average talk time of each agent in a campaign in order to adjust its dialing speed. Although administrators can set initial pacing of dialer for each campaign, the actual pacing at any given time fluctuates between

the maximum and minimum pacing boundaries of the campaign according

to current call activity."

24.     Paragraph 15 above, reproduced form the initial complaint in this action, alleges

that Defendant's representative advised its phone system stored Plaintiff's phone number and

hence that it has the capacity to store phone numbers.  The Manuel confirms that Defendant's

phone system can store phone numbers.

25.     Paragraph 15 above previously alleged that Defendant's representative advised

that its phone system automatically selected Plaintiff's phone number to dial and hence that it

has the capacity to select phone numbers to be dialed.  The Manuel confirms that Defendant's

phone system automatically selects the phone numbers for the targets to which Defendant

intends to telemarket.

26.     Paragraph 15 above previously alleged that Defendant's phone system can

automatically dial the numbers that it selected to be dialed.  The Manuel confirms that

Defendant's phone system automatically dials phone numbers it automatically selected to be

dialed.

27.     Paragraph 7 above, reproduced from the initial complaint in this action, defines

the term Automatic Telephone Dialing System as "equipment which has the capacity—(A) to

store or produce telephone numbers to be called, using a random or sequential number generator;

and (B) to dial such numbers," and paragraph 18 above, reproduced from the initial complaint in

this action, alleges that "[u]pon information and belief, including the representations made by

Defendant's representative, the telemarketing calls from Defendant to Plaintiff were placed by

Defendant using an Automatic Telephone Dialing System."   The Manuel confirms that

Defendant's phone system has the capacity to store telephone numbers, has the capacity to

produce telephone numbers, has a random number generator, has a sequential number generator, has the capacity to produce numbers randomly to be dialed, has the capacity to produce numbers sequentially to be dialed, and has the capacity to dial such numbers automatically.

28.    Defendant's phone system is a predictive dialer.

29.    Defendant's phone system has the capacity to generate numbers and dial them without human intervention.

30.    Defendant's phone system has the capacity to generate numbers from calling lists and dial them without human intervention.

31.    Defendant's phone system has the capacity to generate numbers randomly and dial them without human intervention.

32.    Defendant's phone system has the capacity to generate numbers sequentially and dial them without human intervention.

33.    Defendant's phone system has the capacity to store numbers and dial those numbers from a database of numbers.

34.    Defendant's phone system has the capacity to store numbers and dial those numbers at random.

35.    Defendant's phone system has the capacity to store numbers and dial those numbers sequentially.

36.    Defendant's phone system has the capacity to produce numbers and dial those numbers from a database of numbers.

37.    Defendant's phone system has the capacity to produce numbers and dial those numbers at random.

38.    Defendant's phone system has the capacity to produce numbers and dial those numbers sequentially.

39.    Defendant's phone system has the capacity to produce telephone numbers to be called, using a sequential number generator and to dial such numbers.

40.    Defendant's phone system has the capacity to produce telephone numbers to be called, using a sequential number generator and to dial such numbers.

41.    Defendant's phone system has the capacity to store telephone numbers to be called, using a random number generator and to dial such numbers.

42.    Defendant's phone system has the capacity to store telephone numbers to be called, using a random number generator and to dial such numbers.

43.    Defendant's phone system is an Automatic Telephone Dialing System.

## CLASS ACTION ALLEGATIONS

44.    Plaintiff brings this action as a Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure for all claims.

45.    Plaintiff brings this class action on behalf of himself and all others persons within the United States who within the four year period prior to filing this Class Action Complaint (the "Class Period") received on their cellular phone one or more telemarketing calls from Defendant or its agents using an automatic telephone dialing system.  Excluded from the class definition is Defendant or any of its employees or agents, or any of their family members, or anyone from whom Defendant has in its records express consent to market to such person goods or services offered by Defendant.  (The "Class").

46.    The members of the Class are so numerous that joinder of all Class members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time,

16

this information is easily ascertainable through discovery of Defendant's records, and Plaintiff believes that there are likely thousands, if not more, individuals in the Class.

47.    Questions of law and fact common to the Class as a whole include, but are not limited to, the following:

        a.    Whether Defendant made calls to cellular telephones using an automatic telephone dialing system during the Class Period to sell goods or services offered by Defendant?

        b.    Whether Defendant should be enjoined from making such calls?

48.    Plaintiff's claims are typical of the claims of the other members of the Class, as the Plaintiff and all members of the Class were called by Defendant seeking to market to them goods or services offered by Defendant without their prior consent.

49.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Class and have retained counsel competent and experienced in complex civil litigation. The interests of Plaintiff are coincident with and not antagonistic to the interests of the other members of the Class.

50.    Class certification of Plaintiff's claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendant.  In addition, Class certification of Plaintiff's claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate injunctive relief with respect to Plaintiff and the Class as a whole. The members of the Class are entitled to injunctive relief to remedy Defendant's ongoing statutory violations.

51.     Class certification of Plaintiff's claims is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly adjudicating the controversy.   Moreover, statutory damages for any one individual plaintiff are not sufficient to induce individual class members to control the prosecution of separate actions and management of these claims as a single class action is more desirable and creates less difficulties than that presented by individuals claims by each class member

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF THE
### TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. § 227

52.     Plaintiff hereby repeats and re-alleges the allegations contained in Paragraphs 1 through 51 as if fully set forth herein.

53.     Defendant, directly or through its agents, used an Automatic Telephone Dialing System to call Plaintiff and other Class members' cellular telephone numbers, without their prior consent, marketing goods or services offered by Defendant.

54.     Based on the foregoing, Plaintiff and other Class members are entitled to an award of $500 for each call made by Defendant in violation of 27 U.S.C. § 227 as well as injunctive relief prohibiting such conduct in the future.

### COUNT II
### KNOWING AND/OR WILLFUL VIOLATIONS OF THE
### TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. § 227

55.     Plaintiff hereby repeats and re-alleges the allegations contained in Paragraphs 1 through 54 as if fully set forth herein.

18

56.     Numerous complaints have been lodged against Defendant to, *inter alia*, the FCC, lawmakers and state agencies around the country related to Defendant's telemarketing practices. Defendant has nonetheless persisted in its violations of 47 U.S.C. § 227.   Defendant even persisted in attempting to sell to Plaintiff its services even after Plaintiff expressly advised Defendant's representative that Defendant was calling Plaintiff's cellular telephone.

57.     Defendant, directly or through its agents, knowingly and/or willfully used an Automatic Telephone Dialing System to call Plaintiff and other Class members' cellular telephone numbers, without their prior consent, marketing goods or services offered by Defendant.

58.     Based on the foregoing, Plaintiff and other Class members are entitled to an award of $1,500 for each call made by Defendant in violation of 27 U.S.C. § 227 as well as injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment granting the Class members the following relief:

A.  As to Count I:

A common fund comprising an award of $500 in statutory damages for each and every telephone call made in violation of 47 U.S.C. § 227 and injunctive relief prohibiting such conduct in the future.

B.  As to Count II:

A common fund comprising an award of $1,500 in statutory damages for each and every telephone call made in violation of 47 U.S.C. § 227 and injunctive relief prohibiting such conduct in the future.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury on all claims so triable.


Dated:   April 23, 2014
         New York, New York

                                        LAW OFFICE OF AARON SIRI

                                        _____
                                        Aaron Siri
                                        120 East 31st Street
                                        New York, New York 10016
                                        Tel: (212) 532-1091

                                        *Attorneys for Plaintiff*